UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **PHILIP LEE ACTLIS** | **CIV. ACTION NO. 5:21-01570** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

On September 7, 2017, Philip Lee Actlis protectively filed the instant application for Title II disability insurance benefits. (Tr. 10, 222-223, 234-235).[1] Actlis, who was 44 years old at the time of the latest administrative hearing, alleged disability as of April 3, 2014, because of severe headaches, neck pain, degenerative disc disease, blurred vision, pinched nerve in the upper back and neck, worsening spinal fusion, heart problems, and high blood pressure. (Tr. 36, 253, 257). The state agency denied the claim on December 18, 2017, at the initial stage of the administrative process. (Tr. 111-123, 143-146). Thereafter, Actlis requested and received an

---

[1] Actlis filed prior applications for benefits on February 20, 2013, and August 8, 2016. (Tr. 114). The 2013 application was denied at the hearing level on March 12, 2014, and apparently not further appealed; whereas the 2016 application was denied at the initial stage of the administrative process on October 18, 2016, and apparently not further appealed. *Id*.

October 9, 2018 hearing before an Administrative Law Judge ("ALJ"). (Tr. 74-105). In a January 24, 2019, written decision, the ALJ determined that Actlis was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 127-139). Actlis petitioned the Appeals Council to review the unfavorable decision.

On February 14, 2020, the Appeals Council granted the request for review, vacated the ALJ decision, and remanded the case for further proceedings because of evidence of additional earnings from 2017, which had the effect of extending the date that the claimant last was insured from December 31, 2018, to December 31, 2019. (Tr. 124-126).

Pursuant to the remand order, the same ALJ held a second administrative hearing on August 6, 2020. (Tr. 25-73). However, in a November 10, 2020 written decision, the ALJ again determined that Actlis was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in significant numbers in the national economy. (Tr. 8-20). Actlis appealed the adverse decision to the Appeals Council. On April 8, 2021, however, the Appeals Council denied Actlis's request for review; thus, the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 7, 2021, Actlis filed the instant, pro se complaint for judicial review of the Commissioner's final decision. Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

### Standard of Review

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to

evaluate the evidence. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted). The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted).

The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. ' 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C.§ 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)　An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)　An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3)　An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4)　If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)　If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

4

>   an adjustment to other work in the economy. If the individual can make
>   such an adjustment, then he or she will be found not disabled. If the
>   individual is unable to adjust to other work, then he or she will be found
>   disabled.

See *Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

### The ALJ's Findings

**I.  Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 14-15). At step two, he found that the claimant suffered severe impairments of degenerative disc disease of the cervical spine. *Id*.[2] He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

**II.  Residual Functional Capacity**

The ALJ next determined that the claimant retained the residual functional capacity ("RFC") to perform light work,[3] except he

---

[2] The ALJ determined that the claimant's medically determinable impairments of hypertension, headaches, and supraventricular tachycardia were non-severe. *Id*.

[3]  Light work entails:
>   . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of
>   objects weighing up to 10 pounds. Even though the weight lifted may be very little,

> can occasionally reach overhead with his left non-dominant upper extremity and can reach, handle, finger and feel frequently with his left -non-dominant upper extremity; and can frequently reach in any direction, handle, finger and feel with his right dominant upper extremity; can occasionally stoop, crouch, crawl and kneel; cannot climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps; is unable to balance on narrow or moving surfaces, but is able to balance occasionally on level surfaces; cannot work in proximity to unprotected heights and dangerous moving machinery; can use foot controls occasionally.

(Tr. 15- 18).

### III. Steps Four and Five

With the assistance of a vocational expert ("VE"), the ALJ determined at step four of the sequential evaluation process that the claimant was unable to perform his past relevant work. (Tr. 19). Accordingly, he proceeded to step five. At this step, the ALJ determined that the claimant was a younger individual, with at least a high school education. *Id.* Transferability of skills was not material to the decision. *Id.*

The ALJ next observed that, given the claimant's vocational factors, and if he had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4; Tr. 19-20. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted the VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id.* In response,

---

a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

the VE identified the representative jobs of photocopy machine operator, *Dictionary of Occupational Titles* ("DOT") Code # 207.685-014; laundry classifier, DOT # 361.687-014; and usher - ticket taker, DOT # 344.677-014, that were consistent with the ALJ's RFC and the claimant's vocational profile. (Tr. 20, 69).[4]

## Analysis

Pursuant to the court's scheduling order, Actlis was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (Oct. 29, 2021 Sched. Order [doc. # 8]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

On June 16, 2022, Actlis filed his appeal brief, which reads, in its entirety:

> [t]his is my brief to disagree with a decision that was made on my Social Security case. I Phillip Lee Actlis, was just informed about an unfavorable decision but still do not agree with the decision that was made. Since September of 2021 I have been seeing Dr. Rubin Bashir from Houston, Tx and I am attaching his notes. I do not understand the reason for the denial. I need a fourth surgery on the same area of my neck and after further diagnosis I found out that I have severe OPLL. I am asking t[he] court to review all the evidence and to not dismiss my case. I am also attaching the notes from Dr. Bashir.

(Pl. Brief [doc. # 15]). Actlis also submitted thirteen pages of office visit notes from Dr. Bashir that range in date from October 4, 2021, through January 21, 2022. *Id*.

---

[4] The VE responded that for the photocopy machine operator, the laundry classifier, and the usher – ticket taker jobs there were 66,000, 70,000, and 113,000 positions available nationwide, respectively. (Tr. 69). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

In short, Actlis has failed to raise any specific error with the ALJ's decision. Nonetheless, the keystone of most every social security disability decision is the ALJ's RFC determination. *Very* generously construed, the court may read Actlis's brief as challenging the ALJ's RFC. In so doing, the court emphasizes that Actlis remained insured for purposes of his Title II claim only through December 31, 2019. (Tr. 13). Therefore, he must establish disability by that date.

The court appreciates that Actlis underwent three neck surgeries (one in 2014 and two in 2018), and that doctors have recommended a fourth. However, the ALJ carefully reviewed the record evidence and listened to testimony from Actlis at two hearings. Certainly, if the ALJ had fully credited Actlis's testimony, then a far more restricted RFC would have ensued. In fact, the ALJ candidly stated that he "heavily considered the need for more limiting restrictions . . ." (Tr. 18).

However, the court observes that, by Actlis's own account, he did well for about one year after his first surgery and even engaged in plumbing work until August 2015. (Tr. 88). Furthermore, he apparently was studying and taking classes during this period because, in June 2016, he managed to earn a Bachelor of Science in professional aeronautics. (Tr. 83). Also, there is a notation in Actlis's treatment record indicating that, as recently as April 2017, he still was working as a truck driver, and that, by October, he was off work only "temporar[ily]." (Tr. 463).

In November 2017, Actlis complained of occasional headaches and occasional blurred vision. (Tr. 477-479). He also had intermittent numbness and tingling in the bilateral fingertips. *Id*. However, bilateral upper extremity strength remained 5/5. *Id*.

Although C-4 surgery was recommended in November 2017, Actlis's condition did not

8

worsen to the point where he finally was motivated to undergo surgery until August 2018. (Tr. 495-500). Unfortunately, after the surgery, Actlis suffered complications from a spinal fluid leak that required him to endure a revision surgery and an associated two-week hospitalization. *See* Tr. 507-517. By October 2018, however, he was doing "okay" overall, with once per week headaches and tingling to the upper extremity. (Tr. 583-585). Nevertheless, he had good upper extremity strength and no problems walking. *Id*.

On July 8, 2019, Actlis returned to Anthony Sin, M.D., for his latest MRI study of the cervical spine. (Tr. 557-559). At that time, he continued to have issues with left upper extremity numbness, especially while driving. *Id*. Overall, however, he was doing much better after surgery as far as his pain went. *Id*. He had good motor strength and a normal gait. *Id*. Dr. Sin diagnosed cervical stenosis of the spine and numbness and tingling in the left arm. *Id*. He recommended further decompression posteriorly, with additional mass screws at C3-4 and C5. *Id*.

Actlis next saw Dr. Sin on September 13, 2019, where he had no chief complaint. (Tr. 555-557). Actlis had not yet decided on surgery. *Id*. However, he stated that he had driven over a bump and experienced immediate pain in his neck, which radiated to his arms. *Id*. He also reported worsening dysphagia thereafter. *Id*. Nevertheless, he moved all extremities well, and had a normal gait. *Id*. Dr. Sin assessed cervical stenosis of the spine, numbness and tingling in left arm, spinal stenosis of cervical region, and pain in the left upper extremity. *Id*.

The most recent treatment note in the administrative record is a December 13, 2019 office visit with Anthony Sin, M.D., which documented Actlis's complaint of increased neck pain after a recent motor vehicle injury. (Tr. 552-554). In addition, Actlis still was experiencing his underlying, baseline neck pain. *Id*. However, he moved all extremities well,

9

with limited range of motion in his neck. *Id*. Dr. Sin diagnosed neck pain, cervical stenosis of the spine, motor vehicle collision. *Id*. X-rays showed no significant change since the last visit. *Id*. While the top screws were broken and bottom screws had backed out slightly, there were no signs of instability on flexion-extension. *Id*. Actlis was to return to the clinic, as needed. *Id*.

Actlis has not identified any instances in the administrative record where his treating medical providers imposed any long-lasting limitations of functioning greater than the limitations recognized by the ALJ. Certainly, no provider has indicated that he is disabled or unable to work. To the contrary, the only medical professional to have assessed the effects of Actlis's various impairments was non-examining agency physician Emily Eisenhauer, M.D., who reviewed the record and issued a residual functional capacity assessment on December 18, 2017, that was consistent with the ALJ's determination. (Tr. 118-120).[5]

The court further observes that, in February 2020, Actlis took a "DOT"- like physical to try and obtain his "license." (Tr. 53). While the results of that physical are not known, the fact that Actlis attempted to obtain his license is an indication that, even if he was unable to return to work as a truck driver, he felt capable of engaging in substantial gainful activity.

Ultimately, the ALJ reduced Actlis's RFC to a limited range of light work, which represents a serious and significant limitation of functioning to account for the effects of his impairments. Actlis, however, maintains that the ALJ did not go far enough, and, in support, relies on his own self-professed limitations of functioning. Nonetheless, the ALJ determined that Actlis's statements concerning the intensity, persistence and limiting effects of his symptoms were *not* consistent with the medical evidence and other evidence in the record. (Tr.

---

[5] Dr. Eisenhauer opined that Actlis retained the exertional capacity for light work, limited to occasional pushing and pulling of left upper extremity and occasional overhead reaching bilaterally. *Id*. He also had to avoid all exposure to hazards. *Id*.

10

18).

In the end, where the objective medical evidence and the opinion of the medical professional conflicted with Actlis's own testimony and self-described limitations, the ALJ credited the former. This credibility determination was well within the ALJ's discretion and is supported by substantial evidence.

Finally, the additional treatment records submitted to the court by Actlis were not before the ALJ or the Appeals Council, and post-date not only the Commissioner's final decision in this matter, but also the last date that he was insured for purposes of disability insurance benefits. In other words, these medical records were not part of the administrative record. Thus, at best, the court could remand the matter to the Commissioner for consideration of Actlis's new evidence. However, the court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

Actlis's new medical records do not satisfy the foregoing criteria. As stated above, the records date from October 4, 2021, through January 21, 2022. However, there is no indication that the treatment records reflect Actlis's impairments during the relevant period, i.e., as of December 31, 2019 – the date he was last insured for benefits -- as opposed to a "later-acquired

disability or . . . the subsequent deterioration of the previously non-disabling condition." *Haywood v. Sullivan*, 888 F.2d 1463, 1471-1472 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985) (internal quotation marks omitted)).

Actlis also has not suggested any explanation for his failure to incorporate the "new" evidence into the medical record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse his failure to submit the evidence earlier). "[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

In sum, Actlis has neither established that the post-decision evidence is material, nor demonstrated good cause for his failure to incorporate the evidence into the administrative record. *Pierre, supra*. Accordingly, Actlis is not entitled to remand. *Id*.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, he considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and according to Plaintiff, should have compelled a different result. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

No matter how sympathetic the court may be to Plaintiff's situation, he still is obliged to establish that he is disabled *within the meaning of* the Social Security Act. The court emphasizes that it is not at liberty to "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision*." *Newton, supra* (emphasis added). The limited two-pronged issue

before the court is whether the Commissioner's determination that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error. Upon review of the (limited) arguments presented, the court is satisfied that the Commissioner's decision comports with the foregoing standard. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 18th day of January, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE